UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID BUCKINGHAM,** | **Civil Action No. 22-6881 (KSH)** |
| Petitioner, | |
| v. | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

Currently pending before the Court is David Buckingham's amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Court has considered the parties' arguments, including their supplemental briefing and authority. *See* Crim. No. 19-935; Civ. No. 22-6881. For the reasons below, the Court denies the amended § 2255 motion and denies a certificate of appealability.

**I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY**

    **a.  Buckingham Pleads Guilty and is Sentenced to 27 Months' Imprisonment**

Buckingham was initially indicted on five counts of wire fraud. (Crim No. 19-935, ECF No. 1.) Pursuant to a plea agreement dated February 8, 2022, he agreed to plead guilty to a two-count Superseding Information. (*Id.,* ECF Nos. 35, 39.) For Count One, wire fraud, the parties stipulated to a base offense level of 7 under U.S.S.G. § 2B1.1, increased by 12 levels due to a loss amount of $356,725.74, and by an additional 2 levels under § 3B1.3 based on Buckingham's abuse of a position of private trust, which resulted in an adjusted offense level of 21. (*Id.,* ECF No. 39 at 9.) For Count Two, willful failure to pay over taxes, the parties agreed that § 2T1.6 applied, with a tax loss of $277,051.25, yielding a base offense level of 18. (*Id.,* ECF No. 39 at 9.) The counts

were grouped pursuant to § 3D1.2(b), resulting in a combined offense level of 21. (*Id.,* ECF No. 39 at 10.) The parties agreed that Buckingham was entitled to a 2-level reduction for acceptance of responsibility under § 3E1.1(a), and, assuming continued cooperation, an additional 1-level reduction under § 3E1.1(b), resulting in a total offense level of 18. (*Id.,* ECF No. 39 at 10.) The parties further agreed not to seek any additional departures or adjustments, though Buckingham reserved the right to seek a variance under 18 U.S.C. § 3553(a), and the government reserved the right to oppose it. (*Id.,* ECF No. 39 at 10.)

Pursuant to the plea agreement, Buckingham also agreed to waive his right to appeal or collaterally attack any sentence imposed within or below the range corresponding to the agreed offense level, and the government agreed not to appeal any sentence within or above that range. (*Id.,* ECF No. 39 at 10-11.) Both parties preserved their rights to challenge the Court's determination of Buckingham's criminal history category and respond to any appeal or collateral challenge not barred by the agreement. (*Id.,* ECF No. 39 at 11.)

On April 7, 2022, Buckingham pleaded guilty before the Court. Under oath, he confirmed that he had thoroughly discussed the plea agreement with Sherman and understood its contents:

> THE COURT:
> We are going to talk about the plea agreement in general now, Mr. Buckingham.
> First of all, have you read it?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: And did you have an opportunity to discuss it thoroughly with Ms. Sherman?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: And with her advice and counsel did you come to a full understanding of all of the terms of this plea bargain letter?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: And did that happen before you authorized her to sign it on your behalf?

>   THE DEFENDANT: Yes, it did.
>
>   THE COURT: And do you have any questions about the plea agreement here right now today?
>
>   THE DEFENDANT: No. None. Thank you.
>
>   THE COURT: Okay. Either of me or of Ms. Sherman?
>
>   THE DEFENDANT: No. Thank you.

(*See* Civ. No. 22-6881, ECF No. 17-2, Plea Tr. at 13:24-14:17.)

At the sentencing hearing on October 4, 2022, Buckingham sought a variance and his attorney gave mitigation arguments under 18 U.S.C. § 3553(a), emphasizing Buckingham's remorse, the collateral consequences of conviction (including likely removal from the United States), and his personal circumstances. (*Id.*, ECF No. 17-3, Sentencing Tr. at 17:18-20:18.) Buckingham addressed the Court, expressed contrition, and described his actions as an aberration. (*Id.* at 23:23-31:21.) The government opposed the variance and argued for a sentence within the guidelines range of 27 to 33 months. (*Id.* at 30:25-35:17.) The Court denied the variance "while respecting very much the good faith that was made for it." (*Id.* at 60:5-8.) The Court sentenced Buckingham to 27 months' imprisonment on each count to run concurrently. (*Id.* at 62.) Buckingham did not file a direct appeal.

### b. Buckingham's Original and Amended § 2255 Motions

On November 29, 2022, Buckingham filed a § 2255 motion pro se. (*Id.*, ECF No. 1.) Because he did not sign the required notice pursuant to *United States v. Miller*, 197 F.3d 644, 652 (3d Cir. 1999), the Court entered an order providing him with the *Miller* notice and permitting him to file an amended petition. (*Id.*, ECF No. 3.)

On or about January 18, 2023, Buckingham submitted an amended motion setting forth four grounds for relief. (*Id.*, ECF No. 4.) He argues that the government failed to disclose in discovery documentation showing that his rent and vehicle costs were to be paid by the Victim

3

Company, and these costs were improperly included in the amount of loss and restitution obligations. (*Id.*, ECF No. 4-1 at 1; ECF No. 3 at 18.) Buckingham also alleges that his attorney was ineffective in negotiating the amount of loss and restitution obligations in the plea agreement. (*Id.*) He further argues that his attorney was ineffective for failing to make compelling arguments for a variance based on the immigration consequences of his conviction, his mental health struggles (and other stressors) that led to his aberrant behavior, and his family responsibilities. (*Id.*)

On April 10, 2023, Buckingham filed a letter requesting that the Court appoint CJA counsel to represent him with respect to his § 2255 Motion, which the Court denied. (*Id.*, ECF No. 6 and 10.)

Buckingham reported to FCI Allenwood to begin serving his sentence on April 28, 2023. (*See* Crim. No. 19-935, ECF No. 56.)

On May 19, 2023, Buckingham filed a letter request to amplify or amend his § 2255 motion to include ineffective assistance claims as related to his housing assignment and surrender date. (*See* Civ. No. 22-6881, ECF No. 7.) On June 7, 2023, the Court denied the letter request, directed the government to file an answer to the amended motion, and permitted Buckingham to file and serve a reply brief. (*Id.,* ECF. No 8.)

On June 23, 2023, the government filed a motion for limited waiver of attorney-client privilege and an extension of time to answer. (*Id.,* ECF No. 10.) On July 18, 2023, the Court granted the government permission to interview Buckingham's attorney and directed the government to file its answer within 45 days. (*Id.,* ECF No. 13.)

On September 1, 2023, the government filed its answer after seeking and receiving a two-week extension of time. (*Id.*, ECF Nos. 14-15, 17.) On September 22, 2023, Buckingham filed his reply brief, which raises several new arguments for relief. (*Id.,* ECF No. 18.)

4

On February 6, 2024, the Court granted Buckingham a reduction in sentence pursuant to Amendment 821, Part B of the U.S. Sentencing Guidelines, which reduced his sentence from 27 to 21 months imprisonment. (*See* Crim. No. 19-935, ECF No. 70.)

On May 24, 2024, Buckingham completed the custodial portion of his sentence and began serving his three-year term of supervised release.[1] (*See id.*, ECF No. 72 at 3.) On June 26, 2025, the Court denied his motion for early termination of supervised release. (*Id.*, ECF No. 75.)

II.     **STANDARD OF REVIEW**

Under § 2255, a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "The statute's language 'is somewhat lacking in precision' but 'afford[s] federal prisoners a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].'" *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). "The scope of relief does not reach 'every asserted error of law.'" *Id.* (quoting *Davis*, 417 U.S. at 346). Instead, § 2255 provides relief for jurisdictional and constitutional claims, as well as limited types of nonconstitutional claims, such as sentencing errors that violate fair procedure or amount to a miscarriage of justice. *See id.* (citations omitted). A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394

---

[1] Although most of the claims raised in Buckingham's amended motion challenge the length of his sentence, they are not moot because he is still serving a term of supervised release. *See e.g., United States v. Doe*, 810 F.3d 132, 143 (3d Cir. 2015) (explaining that a § 2255 movant on supervised release may still challenge an already-served term of imprisonment because the district court may reduce the duration of the supervised release term if the movant prevails).

5

F.3d 182, 189 (3d Cir. 2005); *United States v. Bentley*, 49 F.4th 275, 283 (3d Cir. 2022). Moreover, because a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

As a "general rule . . . claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Frady*, 456 U.S. at 167-68), or actual innocence. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). "In the habeas context, [courts] allow a party to overcome their 'procedural default' if it can show either cause and prejudice or actual innocence." *United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022).

### III. DISCUSSION

#### a. Ground One—Alleged Brady Violation and Ineffective Assistance of Counsel for not Turning Over or Obtaining Documents in Discovery

In Ground One, Buckingham raises a "*Brady* violation"[2] and contends that the prosecution failed to turn over in discovery two letters issued by the Victim Company, which show it was to cover his rent and vehicle costs. According to Buckingham, these documents reduce the loss amount and restitution obligations[3] in the plea agreement. (*See* Civ. No. 22-688, ECF 4-1 at 1.) He also argues that the that Victim Company's CEO was aware of certain travel expenses, which also were included in the amount of loss and restitution obligations. (*Id*.) Buckingham attaches to his

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] It is well established that a petitioner may not challenge an order of restitution through a § 2255 motion. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (collecting cases)); *see also Awe v. United States*, No. 15-8155, 2017 WL 1157865, at *4 (D.N.J. Mar. 27, 2017) (explaining same and dismissing § 2255 claim challenging an order of restitution). To the extent Buckingham challenges the amount of his restitution order, such a claim is not cognizable in this proceeding and is denied.

amended motion a June 2015 letter from the Victim Company, which provides his salary and generally states that his "accommodation and vehicle costs" were to be covered. (*Id.* at 2.) Buckingham contends that in January 2022 he gave this letter to his public defenders Emily Sherman and John Yauch, "but it was evident from subsequent conversations that . . . it would not be of use." (*Id.* at 1.)

With their Answer, the government provides a certification from Sherman regarding the loss calculation. She avers that "[t]he loss number originally calculated by the Government was approximately $363,800, which translated to a total offense level of 18, after accounting for acceptance of responsibility, or a sentencing range of 27 to 33 months' imprisonment. The Government's loss amount provided Mr. Buckingham with a credit of $2,500 per month for a rental allowance." (ECF No. 17-1, Sherman Cert. at ¶ 6.) Sherman states that Buckingham claimed that his monthly rental allowance was $5,000, and that she requested that the government reduce the loss amount "to reflect a rental allowance of $5,000 per month." (*Id.* at ¶ 7.) However, the government "produced an email, dated April 15, 2017, between the managing director of the [Victim Company] and Buckingham, in which managing director agreed to a rental reimbursement of $3,750 every six weeks." (*Id.*) According to Sherman, Buckingham could not produce any documentation showing that his rental income was $5000 a month. (*Id.*)

Nevertheless, Sherman avers that she attempted to negotiate a lower loss amount:

> [D]uring our discussions of the Government's plea offer and its loss calculation, and after careful review of the financial records provided in discovery, I sent the Government our own loss calculation. This loss number was approximately $244,800, which translated to a total offense level of 16, after accounting for acceptance of responsibility, or a sentencing range of 21 to 27 months' imprisonment. The defense's loss amount provided Mr. Buckingham with a credit of $5,000 per month for a rental allowance in 2016, and approximately $2,708.33 per month for a rental allowance in 2017 and 2018. The 2017 to 2018 rental

7

>allowance was calculated based on a rate of $3,750 every six weeks. *See* Exhibit A. The defense loss amount also credited Mr. Buckingham with additional expenses, including travel within the United States and to and from the United Kingdom. The defense loss amount was provided to the Government after consultation with Mr. Buckingham.

(*Id.* at ¶ 8.) According to Sherman, the government rejected this calculation. (*Id.* at ¶ 9.) Sherman sought additional information from Buckingham, and he provided the June 10, 2015 letter from the Victim Company referenced above, which states the Company would cover Buckingham's rent and vehicle costs but does not contain the specific amounts the Victim Company paid to Buckingham. (*Id.* at ¶ 10.) In addition, Sherman avers that she discussed the rental costs with Buckingham but not vehicle costs because the government had already indicated it would not give Buckingham credit for them. (*Id.* at ¶¶ 10-11.)

Sherman also states that the original plea agreement did not reflect the rental reimbursement in Exhibit A. (*Id.* at ¶ 12.) After consulting with Buckingham, she requested that the government amend its loss calculation to provide him with credit for $3,750 every six weeks and the government agreed to the revision. As a result, the loss and restitution amounts were reduced to $356,725. (*Id.* at ¶ 13.)

The Court first addresses Buckingham's claim under *Brady v. Maryland*, 373 U.S. 83 (1963). There, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a due process violation under *Brady*, "'a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment.'" *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (citing *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997) (citations omitted)).

Notably, the government is not required under *Brady* to furnish a defendant with information he already has or, with any reasonable diligence, he can obtain for himself. *Id.* at 213 (quoting *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir.1984)).

Here, Buckingham appears to claim that the prosecution failed to disclose letters that contained information about Buckingham's rental and vehicle allowances. Buckingham admits he has the 2015 letter and has not explained why he himself could not obtain the 2016 letter (or comparable documents) using reasonable diligence. Moreover, he has not provided any other evidence showing what his rent and car expenses were during the relevant time period, which is information that should be readily available to him. Therefore, his Brady claim fails under *Pelullo*.

Moreover, *Brady* does not require the prosecution to obtain and turn over this type of information to the defense at the plea stage. *Brady's* disclosure obligations ensure that a defendant is not "deprive[d] of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985). In contrast, a criminal defendant is who pleads guilty is entitled to information necessary to ensure that his plea is voluntary, and that any related waiver of his rights are made "knowing[ly], intellingent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (quoting *Brady v. United States*, 397 U.S. at 748) (alterations in original). By pleading guilty, Buckingham waived his right to a jury trial as well as the accompanying constitutional guarantees. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019) (explaining that a valid unconditional guilty plea relinquishes "not only a fair trial, but also other accompanying constitutional guarantees"). In *United States v. Ruiz*, 536 U.S. 622, 630 (2002), the Supreme Court held that the government is not obligated to produce material impeachment evidence prior to a guilty plea. *Id.*

9

Courts have held, however, that "abusive prosecutorial discovery tactics may render a guilty plea involuntary, even if it does not amount to a *Brady* violation, when the prosecution's actions amount to deceit or lack of candor that materially affects the defendant's understanding of the case against him. *United States v. Garrett*, 141 F.4th 96, 108 (4th Cir. 2025). To succeed on this type of claim, Buckingham would need to show that the nondisclosure at issue invalidated his plea. *See Matthew v. Johnson*, 201 F.3d 353, 364 n.15 (5th Cir. 2000) ("Even if the nondisclosure is not a *Brady* violation, it may be argued . . . that it made it impossible for [the defendant] to enter a knowing and intelligent plea."). Buckingham must also show "a reasonable probability that, but for the misconduct, he would not have pled guilty and would have insisted on going to trial." *Garrett*, 141 F.3d at 111.

Buckingham cannot meet that standard. He has attached the 2015 letter to his amended motion and provides no evidence showing that the government possessed the 2016 letter during his plea negotiations and withheld it. Thus, he has not shown that the prosecution engaged in deceit or lack of candor that affected his understanding of the case. Moreover, Buckingham does not allege that he would not have pleaded guilty and would have gone to trial. He merely claims that the letters "cast doubt" on the amount of loss and his restitution obligations.

Buckingham also contends that his attorney provided ineffective assistance in negotiating the loss amount and/or for failing to hold the prosecution to their *Brady* obligations. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding[,]" including in plea negotiations, at sentencing, and on appeal. *Lafler v. Cooper*, 566 U.S. 156, 162-165 (2012). To state a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was unreasonable under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also establish that counsel's deficient

performance was prejudicial to the defense. *Id.* at 691-92. This same two-part standard applies to ineffective-assistance claims arising out of the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

When assessing deficiency, courts presume that counsel's performance falls within the wide range of reasonable professional assistance. *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989). Counsel's conduct is deficient where the errors are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Where a petitioner claims that counsel failed to discover or disclose exculpatory evidence, the prejudice requirement requires him to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Where a petitioner alleges that his counsel should have negotiated or argued for a lower sentence, he must demonstrate that but for counsel's ineffective assistance, he would have received that lower sentence. *See United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

As noted above, Buckingham does not allege that he would not have pleaded guilty and would have gone to trial absent his attorney's alleged errors. Instead, he appears to argue that she did not do enough to negotiate a lower loss amount after he gave her the July 2015 letter. In his reply brief, however, he does not dispute Sherman's sworn statements regarding her efforts to negotiate a reduction in the loss amount. These efforts, although unsuccessful, do not amount to deficient performance. The record reflects that Sherman effectively negotiated favorable terms within the plea agreement and secured a lower offense level than recommended in the PSR, which

11

undermine any claim of deficient performance or resulting prejudice under *Strickland*.[4] Moreover, she was not deficient for failing to request that the government turn over the 2016 letter, as there is no evidence that the prosecution possessed it during plea negotiations.

For all these reasons, Buckingham's ineffective assistance claim premised on his attorney's failure to negotiate a lower loss amount fails on the merits.

### b. Grounds Two, Three, and Four—Ineffective Assistance at Sentencing

Buckingham further argues that his attorney failed to argue for a variance and that his mental health struggles, role as a family caregiver, the aberrational nature of his offense, and his likely deportation "were not sufficiently addressed" at the sentencing hearing. (*See* Civ. No. 22-6881, ECF 4-1 at 1.) These allegations are not supported by the record. As explained below, Sherman thoroughly emphasized Buckingham's deep remorse, mental overwhelm, role as a family caregiver, and immigration consequences in direct support of a variance under § 3553(a). (*Id.*, ECF No. 17-3, Sentencing Tr. at 17-20.) She requested a variance and presented mitigation arguments under 18 U.S.C. § 3553(a), emphasizing Buckingham's remorse, the collateral consequences of conviction (including likely removal from the United States), and his personal circumstances:

> MS. SHERMAN:
>
> Under the 3553(a) factors it is our position that a variance is warranted in this case. Just to begin, Mr. Buckingham is extremely

---

[4] Prior to sentencing, Probation issued the final PSR, which assessed an additional 2 levels under its grouping analysis, finding that Buckingham affected two victims (both the Victim Company and the IRS), resulting in a total offense level of 20 and a Guidelines range of 33 to 41 months imprisonment. (*See* Civ. No. 22-688, ECF No. 17 at 2-3.) However, the Court ultimately adopted the parties' joint recommendation via the plea agreement, applying an offense level of 18 and imposing a sentence of 27 months, at the bottom end of the resulting Guidelines range. (*Id.*, ECF No. 17-3, Sentencing Tr. at 62.) Notably, Sherman successfully advocated for that outcome by rebutting the PSR's grouping position and advancing mitigation arguments under § 3553(a) that the Court credited.

remorseful for his offense conduct in this case. He sincerely apologizes to [the Victim Company] and their employees for betraying their trust.

He wants to pay the restitution. He wants to make amends.

He came here at approximately 28 years old. A new country, new family, newborn son. It certainly doesn't excuse his offense conduct in this case, but I think it is important to note that there was a lot going on at that time. And perhaps he, you know, he was overwhelmed. Again, not an excuse but a lot going on.

Since his arrest in December 2019, he has been on pretrial release now for almost three years without incident. And he has taken steps to change his life for the better.

He has removed himself from the insurance industry entirely. He is working as a soccer coach and as an Amazon delivery driver. The soccer -- both jobs are brand new to him, but the soccer coaching, it is a totally new career. He is finding it fulfilling as noted in our investigation report. He is talking about how he wishes he had encountered it sooner. He feels so fulfilled working with these kids, working with their families. He has kind of found his niche. And he is able to help provide for his family by doing that.

I think over all the collateral consequences in this case are huge. He is facing removal. He is facing removal from his family, from the country.

Regardless of, you know, what his upbringing may have been like or what his perceived economic situation may be at this time, there is no doubt that a removal of a parent from a household is going to be highly traumatic for the spouse and for the children.

There are young children involved. There are children who had no say in this offense and who will be forever impacted by the result of this case.

As Your Honor saw, Mr. Buckingham is very close with his five year old daughter, Eliza. Your Honor saw the videos and the pictures. They cook together every day. He takes her to play spaces. He takes her to swimming, to camp. She is going to be forever impacted by this case.

And Zachary, David's stepson, they have been able to bond during the Covid pandemic. David has taken on an active role in Zachary's schooling. Bonding over soccer. Teaching him to ride a bike.

David wishes he, you know, had a closer relationship with his son, William, in the UK. He has no doubt been impacted in many

> ways since his son and his ex-wife left when his son was a newborn and not being able to see his son as much as he would like.
>
> Leigh, who is here to show her support. She has become the, you know, the primary breadwinner. And she relies on David greatly to cook, to clean, to buy groceries, to take the kids where they need to be. And she is unsure how, understandably, how the family is going to manage if and when David is removed from the United States.
>
> As far as the purposes of sentencing go, the punitive deterrent and protective purposes of sentencing, there is no suggestion that David is a danger to the community. So incarceration is not required in order to protect the community from him.
>
> As I mentioned in my sentencing memo, as far as deterrence goes, David has in a way already showed that he is deterred, by his compliance with pretrial release for three years. As noted in the recidivism report, he is a true Criminal History Category I. This is a first contact with the criminal justice system. So statistically speaking, he is highly unlikely to ever re-offend.
>
> As far as punishment goes, Your Honor, the large restitution in this case is very punitive. Any custodial term, if Your Honor decided to impose, would be very punitive on Mr. Buckingham given that he has – this is his first contact with the criminal justice system and he anticipates removal from the U.S., so that would be further separate[ed] from his family.

(*Id.* at 17:18-20:18) (alterations added).)

Sherman also repeatedly highlighted the severe consequences of Buckingham's likely removal from the United States. (*Id.* at 21.) Collectively, these mitigating factors, she argued, warranted leniency, particularly given the absence of ongoing danger to the community and the punitive nature of restitution:

> And just briefly going back to the purposes of sentencing, as far as rehabilitation goes, Your Honor, supervision would be where the most rehabilitation would occur. Again, I think he has already showed this somewhat from his three years of compliance on pretrial release. And certainly the variance would give him the most opportunity to rehabilitate himself and to make meaningful payments towards this restitution.
>
> Again, the collateral consequences here are significant. It is our position that those are the reasons why a variance is warranted,

>the removal from the United States. So we are asking for a variance from the guideline range, Your Honor.

(*Id.* at 22:21-23:8.) In response to defense counsel's mitigation argument, this Court replied, "Well said, and well put out in your sentencing memo."[5] (*Id.* at 23:11-12.)

The government opposed the variance and argued for a sentence within the guidelines range of 27 to 33 months. (*Id.* at 30:25-35:17.) The Court ultimately denied the variance "while respecting very much the good faith that was made for it." (*Id.* at 60:5-8.)

The lengthy excerpts from a detailed, well-presented argument of significant length are fatal to Buckingham's claim that his attorney did not sufficiently argue for a variance, which is denied under *Strickland*.

### c. Ineffective Assistance Claims Raised in Buckingham's Reply Brief

Buckingham raises several new ineffective assistance claims in his reply brief. For completeness, the Court addresses them and finds them meritless.

First, Buckingham claims that his attorney failed to explain the appeal waivers in his plea agreement. (Civ. No. 22-6881, ECF No. 18 at 1.) But the transcripts of the plea and sentencing hearings show that Buckingham understood the plea agreement, including the appeal waiver, acknowledged satisfaction with his attorney, and received the very sentencing benefits that she negotiated on his behalf.

The Court specifically inquired about the waiver provision at the plea hearing, confirmed that Buckingham understood that any sentence at or below 33 months would not be subject to appeal or collateral attack, and clarified that no provision of the plea agreement precludes pursuit of claims of ineffective assistance of counsel:

---

[5] Buckingham also addressed the Court, expressed contrition, and described his actions as an aberration. (*Id.* at 23:23-31:21.)

> THE COURT: Okay. There is a conditional waiver of appeal in the plea agreement. I want to review that with you. You have the right in the absence of a waiver to plead – I'm sorry to file an appeal of a conviction or sentence if you believe that the judge has committed error. And you also have the right in the absence of a waiver if you believe there has been an error to file a collateral challenge to your conviction or sentence under Section 2255 of the criminal code, sometimes that's called a habeas corpus petition.
>
> As set forth in your plea agreement, you cannot file an appeal, petition, writ, motion, or any collateral attack that challenges your sentence if I impose a sentence that is within or below the range that results from a guidelines offense level of 18.
>
> So if we translated that, if I were to sentence you to above 33 months, Ms. Sherman, does Mr. Buckingham's appellate and collateral challenge rights spring into action under that circumstance?
>
> MS. SHERMAN: I believe it does not, Your Honor.
>
> THE COURT: Okay. Well, no.
>
> MS. SHERMAN: I believe it does, excuse me.
>
> THE COURT: Right. Above 33 months. But anything below 33 months would not be an appealable sentence. Understood?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Now neither you nor the government can appeal claiming that I should not have accepted the stipulations in the plea agreement that appear in Schedule A and as well no provision of the plea agreement precludes you from pursuing, in an appropriate forum when permitted by law, an appeal, a collateral attack, a writ, or a motion claiming that you received Constitutionally ineffective assistance of counsel. Understood?
>
> THE DEFENDANT: Yes, Your Honor.

(*See id.*, ECF No. 17-2, Plea Tr. at 20:6-21:6.)

Buckingham also contends that Sherman did not explain the difference between a departure and a variance and asserts that she should have sought departures for diminished capacity, aberrant behavior, and family ties and responsibilities. (*Id.*, ECF No. 18, at 1.) There are "two types of sentence that diverge from the original Guidelines range . . . . A traditional sentencing 'departure' diverges . . . from the originally calculated range 'for reasons contemplated by the Guidelines

16

themselves.' In contrast, a 'variance' diverges . . . from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." *U.S. v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011) (citing *United States v. Floyd*, 499 F.3d 308, 311 (3d Cir. 2007) (internal citations omitted)). In the plea agreement, Buckingham received a reduction for acceptance of responsibility, but the parties agreed not to seek any additional departures or adjustments. The plea agreement preserved Buckingham's right to seek a variance under 18 U.S.C. § 3553(a), and the government reserved the right to oppose it. (Crim. No. 19-935, ECF No. 39 at 10.) Buckingham argues that Sherman gave up a viable defense strategy by waiving the ability to seek a departure. (Civ. No. 22-6881, ECF No. 18, at 1.)

The Court disagrees. Even if Sherman did not explain to Buckingham the technical differences between a departure and a variance, she argued for a variance based on the same factors he now claims should have been the basis for departures. Moreover, Buckingham is unable to show that he would have received a lower sentence or some other benefit had Sherman explained this distinction to him or negotiated a plea agreement that did not include the stipulation that he could not seek any departures. Therefore, this claim also fails on the merits.

In his reply brief, Buckingham also states in passing that other than a single email, "there had been no discussion" of count two, willful failure to pay taxes, and that pretrial discussions focuses on court one, the wire fraud count. (*Id.*, ECF No. 18, at 1-2.) Buckingham contends that time was running out before trial when he accepted the plea agreement, but he does not allege that he would not have entered the plea agreement and would have gone to trial or that he would have received a lower sentence had Sherman discussed the possibility of this charge in more depth or at an earlier date. Therefore, he has not shown he was prejudiced.

17

Buckingham also appears to claim in his reply brief that his attorney failed to advise him "of any plea negotiation which took place in an attempt to alleviate likely immigration consequences" of having him plead guilty to a crime may result in his removal from the United States. (*Id.* at 5.) Buckingham also claims in his reply brief that she

> failed to identify the definition of an aggravated felony to me, which, in this case, is one where losses to the victim exceed more than USD10,000.[6] Counsel failed to address whether the victim had been made whole by their insurers, thereby making the victim's losses less than the threshold nor explained that the felony being "aggravated" is the primary driver behind removal proceedings and thus the paramount obstacle. Could counsel have discussed a conviction for a non-aggravated felony during plea negotiations or sought administrative closure for example?

(*Id.*) Buckingham also admits, however, that he "is not stating that [he] did not know the potential consequences of this matter could result in [his] deportation." Rather, he claims that Sherman could have "taken steps to mitigate it[.]" (*Id.*)

In *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010), Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. Buckingham admits and the plea transcript confirms that he discussed the "deportation consequences" of his guilty plea with Sherman. (*See* Civ. No. 22-6881, ECF No. 17-2, Plea Transcript at 18:13-19:5.) Therefore, Buckingham is not entitled to relief under *Padilla*.

To the extent Buckingham asserts that Sherman should have attempted to negotiate a plea deal in which he pleaded guilty to a non-aggravated felony, he provides no facts to suggest that

---

[6] Section 237(a)(2)(A)(iii) of the INA, as amended, provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The Act defines "aggravated felony," in relevant part, as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i); *see also Chiao Fang Ku v. Attorney General United States of America*, 912 F.3d 133, 139 (3d Cir. 2019).

she could have convinced the government that the amount of loss fell below the $10,000 threshold for an aggravated felony. He merely speculates that the Victim Company may have had insurance to offset the loss, without providing any evidence to support this theory. Given the facts of this case, Sherman was not ineffective for failing to negotiate a plea deal without immigration consequences. And Buckingham cannot show a reasonable probability that he would been convicted of an offense that did not render him eligible for deportation.

For all these reasons, the Court denies the ineffective assistance claims raised in Buckingham's reply brief.

### d. The Court Denies a Certificate of Appealability

The Court also denies a certificate of appealability. A petitioner may not appeal a final order in a § 2255 proceeding unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 578 U.S. at 127 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the Third Circuit, "[t]his showing 'is satisfied even if the claim is only debatably constitutional.'" *Clark v. United States*, 76 F.4th 206, 212 (3d Cir. 2023) (quoting *United States v. Doe*, 810 F.3d 132, 145 (3d Cir. 2015)).

Here, Buckingham has not met that standard, and the Court denies a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth in this Opinion, the Court denies Buckingham's amended § 2255 motion and denies a certificate of appealability. An appropriate Order follows.

*s/Katharine S. Hayden*
KATHARINE S. HAYDEN
United States District Judge

DATED: August 27, 2025.